UNITED STATES of America, Plaintiff–Appellee,

v.

**Arthur Ronald CRITTENDON a/k/a Jabbar Muwakkil Ragib, Defendant–Appellant.**

No. 88–5202.

United States Court of Appeals, Fourth Circuit.

Argued May 12, 1989.

Decided Aug. 29, 1989.

Thomas J. Foltz, Alexandria, Va., for defendant-appellant.

Kimberly M. Zimmer, Sp. Asst. U.S. Atty. (Henry E. Hudson, U.S. Atty., Alexandria, Va.; Laureen A. Buckert and Rosalie C. Patrick, Third Year Law Students, on brief), for plaintiff-appellee.

Before ERVIN, Chief Judge, and PHILLIPS, Circuit Judge, and KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.

ERVIN, Chief Judge.

Arthur Ronald Crittendon, also known as Jabbar Muwakkil Ragib [1], appeals from his conviction on a single count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). He also appeals the sentence of fifteen years imprisonment imposed under 18 U.S.C. § 924(e)(1). Finding no merit in Ragib's assertions of error, we affirm.

I.

Sometime around 3:00 a.m. Saturday morning on March 12, 1988, Arlington County Police Officers A.J. Baciocco and Stephen D. Geary responded to a burglary in progress call at 1429 South Royal Street in Alexandria, Virginia. The caller reported a burglar on the balcony of her apartment. When Geary and Baciocco arrived at the apartment building, they noticed Ragib and another man, later identified as Ragib's nephew, a Mr. Green,[2] standing on a landing in the building's stairwell. The officers approached Green and Ragib on the landing and told the two men that they were investigating a burglary. Ragib identified himself and said that he lived in the building and knew why the police had been called. Ragib stated that Green woke up his sister, who lived in the apartment below

---

**1.** In accordance with the nomenclature adopted by the parties, we will refer to the defendant as Ragib.

**2.** No reference to Green's full name appears in the record.

Ragib's, when he attempted to crawl onto her balcony. Unaware that the would-be intruder was in fact her brother, Green's sister called the police.

At some point during this conversation another officer, Corporal Comfort, arrived. Geary then walked down to the sister's apartment to verify the story. While he was knocking on the door, he heard shouts and scuffling in the stairwell. He returned to find Comfort and Baciocco pursuing Green down the hall. Geary ordered Ragib, who was still standing on the landing, to get down on the floor. Geary then handcuffed Ragib and conducted a pat down search. He found a loaded .357 revolver and six additional rounds of ammunition in a shoulder holster.

Ragib was subsequently indicted on one count of unlawful possession of a weapon by a convicted felon. No charges were ever brought for the reported burglary. On August 22, 1988, a jury found him guilty as charged. Because of Ragib's criminal record[3] he was sentenced under 18 U.S.C. § 924(e). Section 924(e), which supersedes the Sentencing Guidelines, requires a mandatory sentence of fifteen years imprisonment and authorizes up to a $25,000 fine for defendants who have at least three prior "violent felony or serious drug offense" convictions. The district court imposed the required fifteen year sentence but did not impose a fine.

## II.

Ragib asserts that the facts of this case do not support a reasonable suspicion of ongoing criminal activity which would justify Geary's stop and frisk. He argues that the pat down search therefore violated the Fourth Amendment and that the evidence thereby obtained should have been suppressed. He also argues that the fact that he was handcuffed prior to the pat down search converted the stop and frisk into an arrest which must be justified under the higher standard of probable cause.

■ "[T]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, —— U.S. ——, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1, 10 (1989). Thus the stop and frisk at issue here was lawful only if it was conducted on the basis of a reasonable suspicion. The presence or absence of reasonable suspicion must be determined in light of the totality of the circumstances confronting a police officer including all information available to an officer and any reasonable inferences to be drawn at the time of the decision to stop a suspect. *See, e.g., United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981).

■ We have little difficulty in concluding that the events of March 12, provided Officer Geary with a reasonable suspicion regarding Ragib. Geary and the other officers were responding to a report of a burglary in progress. Ragib and his nephew were the only persons encountered in the vicinity of the reported crime, a factor recently emphasized by this court in *United States v. Moore*, 817 F.2d 1105 (4th Cir. 1987). And, most significantly, Ragib's admitted companion, Green, attempted to flee during the officers' investigation. *See United States v. Haye*, 825 F.2d 32, 34–35 (4th Cir.1987) (suspects' immediate flight after officers identified themselves was sufficient to create reasonable suspicion).

■ The situation also justified Geary's decision to frisk Ragib for weapons. "So long as the officer is entitled to make a forcible stop, and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose." *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct.

---

**3.** While Ragib admitted to a total of five prior felony convictions, the record only discloses the details of three. On February 1, 1971, Ragib was convicted for the armed robbery of a gift shop. On May 3, 1971 Ragib was convicted for robbing a Howard Johnson Motor Lodge and holding an employee at gunpoint. On May 4, 1974, he was convicted for assaulting an inmate and guard while serving time on the prior convictions.

1921, 1923, 32 L.Ed.2d 612 (1972) (footnote omitted). Upholding the stop and frisk at issue in *Moore, supra,* the court stated, "The circumstances surrounding the stop support the officer's belief that a further frisk for weapons was warranted. The hour was late, the street was dark, the officer was alone, and the suspected crime was a burglary, a felony that often involves the use of weapons." *United States v. Moore,* 817 F.2d, at 1108. Except for the fact that this incident occurred indoors, those circumstances were present here. Further, Geary testified at the suppression hearing that he saw a leather strap on Ragib's shoulder beneath his coat as he was handcuffing Ragib and before he conducted the frisk. Geary correctly suspected that the strap was part of a shoulder holster and that Ragib was carrying a weapon.

 Ragib's argument that the fact that he was handcuffed turned the encounter into an arrest and that Geary's actions must therefore be scrutinized under the higher standard of probable cause is without merit. Brief, even if complete, deprivations of a suspect's liberty do not convert a stop and frisk into an arrest so long as the methods of restraint used are reasonable to the circumstances. *See, e.g., United States v. Perate,* 719 F.2d 706, 708–09 (4th Cir.1983) (fact that officers approached suspect's car with drawn weapons did not convert stop into an arrest); and *United States v. Bautista,* 684 F.2d 1286, 1289 (9th Cir.1982) (use of handcuffs during stop and frisk does not convert encounter into a custodial arrest). Here, Geary could reasonably anticipate that he might be required to go to the aid of his fellow officers and that Ragib, like Green, might then attempt to flee. Geary's use of handcuffs was thus "reasonably necessary to maintain the status quo and protect [officer] safety during an investigative stop." *United States v. Taylor,* 857 F.2d 210, 213 (4th Cir.1988).

### III.

Ragib also challenges the district court's refusal to instruct the jury on his proffered defense of justification. Ragib, whose work as a free-lance photographer requires him to attend evening social events, was shot while returning home late in the evening on July 5, 1987. Prior to his shooting, Ragib's wife received several death threats over the telephone. Ragib testified that he purchased and carried the .357 revolver solely to protect himself against the possibility of another shooting. The trial court accepted Ragib's assertion that his motivation for possessing the gun was self-defense. The court refused, though, to instruct the jury on the defense of justification because there was no evidence to suggest that Ragib was in imminent danger on the evening of his encounter with officer Geary.

The availability of common law defenses to charges of federal weapons violations is a question of first impression in this circuit. At least one other circuit has ruled that self-defense, justification, necessity, and other common law criminal defenses are valid defenses to federal weapons possession charges. *See United States v. Panter,* 688 F.2d 268 (5th Cir.1982). Noting the Supreme Court's admonition that "Congress in enacting criminal statutes legislates against a background of Anglo–Saxon common law," *United States v. Bailey,* 444 U.S. 394, 415 n. 11, 100 S.Ct. 624, 637 n. 11, 62 L.Ed.2d 575 (1980), the *Panter* court concluded that "Congress's [sic] failure to provide specifically for a common law defense in drafting a criminal statute does not necessarily preclude a defendant from relying on such a defense." *United States v. Panter,* 688 F.2d, at 271 (footnote omitted). The court held that Panter, who took possession of and fired a gun while being stabbed by an assailant, was entitled to a jury instruction on self-defense and necessity.

Two other circuits implicitly recognize the availability of common law defenses to federal weapons charges. *See United States v. Agard,* 605 F.2d 665 (2nd Cir. 1979); *United States v. Wheeler,* 800 F.2d 100 (7th Cir.1986), *overruled on other grounds United States v. Sblendorio,* 830 F.2d 1382 (7th Cir.1987); and *United*

*States v. Pirovolos,* 844 F.2d 415 (7th Cir. 1988). Other circuits have chosen not to rule on the ultimate validity of such defenses in cases where the evidence in the defendant's favor was not sufficient to support the requested defense. *See United States v. Nolan,* 700 F.2d 479 (9th Cir.1983); and *United States v. Stover,* 822 F.2d 48 (8th Cir.1987). We think the latter approach is more appropriate here.

■■■ To be entitled to the defense of justification, the defendant must produce evidence which would allow the factfinder to conclude that he:

(1) was under unlawful and present threat of death or serious bodily injury;

(2) did not recklessly place himself in a situation where he would be forced to engage in criminal conduct;

(3) had no reasonable legal alternative (to both the criminal act and the avoidance of the threatened harm); and

(4) a direct causal relationship between the criminal action and the avoidance of the threatened harm.

*United States v. Wheeler,* 800 F.2d, at 107, citing *United States v. Gant,* 691 F.2d 1159, 1162–63 (5th Cir.1982). Ragib's claim of entitlement to an instruction on the defense fails because the evidence does not support a conclusion that he was under a present or imminent threat of death or injury. While his fear of another attack may have been rational and might have been his real motivation for carrying a revolver, generalized fears will not support the defense of justification. *See United States v. Harper,* 802 F.2d 115 (5th Cir. 1986) (convicted felon who purchased hand gun for protection after repeated robberies of his store not entitled to justification instruction because he was not in imminent danger). Instead, the defendant must show that a real and specific threat existed at the time of the unlawful possession.

Without ruling on the general availability of the common law defense of justification in possession of a firearm by a convicted felon cases, we find that on the facts of this case Ragib was not entitled to an instruction on the defense.

### IV.

■■■ Ragib also asks this court to review the fifteen year prison term imposed by the trial court. As noted above, Ragib's sentence is an enhanced mandatory sentence required by § 924(e)(1) for defendants convicted of three or more prior violent or narcotics related felonies. Ragib nonetheless asserts that his sentence was improper. He suggests that we have authority under 18 U.S.C. § 3742(a)(4) to review the "reasonableness" of his sentence.[4] He argues that a sentence of fifteen years without parole is unreasonable on the facts of this case because all of his prior felony convictions occurred more than fifteen years before the present offense and he has been a law abiding citizen since his last release from prison.

Despite the equitable appeal of Ragib's situation, we cannot conclude that § 3742(a)(4) gives us authority to alter his sentence. The traditional scope of an appellate tribunal's review of sentencing decisions was confined to determining whether the sentence imposed was within the statutory limits for the crime of conviction. *See Dorszynski v. United States,* 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974). Appellate courts had no authority to review a district court's exercise of its sentencing discretion so long as the sentence imposed was within the statutory limits. Appellate courts could, however, remand for resentencing but only to rectify gross procedural faults such as a district court's complete failure to exercise sentencing discretion or reliance on incorrect information. *See, e.g., United States v. Hack,* 782 F.2d 862 (10th Cir.1986).

The complete reform of the sentencing process brought about by the new Sentencing Guidelines has certainly altered the role of appellate courts. But even if, as Ragib

---

**4.** Section 3742(a)(4) states "Appeal by a Defendant—A defendant may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence—... was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable."

argues, Congress did intend § 3742(a)(4) to alter the traditional scope of our review of discretionary sentencing decisions, § 3742(a)(4) does not extend to this case for the simple reason that Ragib's sentence is specified by statute. Because § 924(e)(1) requires a fifteen year sentence without parole, the district court had no discretion over his sentence for this court to review. What Ragib really asks is for this court to find that Congress' decision to impose a mandatory fifteen year sentence in circumstances such as Ragib's was unreasonable. That Congressional decision, however, is clearly beyond this court's appellate jurisdiction. Accordingly we have no power to rule that an enhanced sentence specified by statute is unreasonable.

Ragib's final argument, that his sentence violates the Eighth Amendment, is also clearly without merit and does not warrant extended discussion. *See Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), and *Hutto v. Davis*, 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982).

### V.

Finding no error in the rulings below, Ragib's conviction is AFFIRMED.