8 F.3d 822
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Donald Gary REMBOLD, Defendant-Appellant.
 No. 93-5214.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: August 17, 1993.
Decided: October 18, 1993.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. M. J. Garbis, District Judge. (CR-92-286-MJG)
 James K. Bredar, Federal Public Defender, Denise C. Barrett, Assistant Federal Public Defender, Baltimore, Maryland, for Appellant.
 Gary P. Jordan, United States Attorney, Joseph L. Evans, Assistant United States Attorney, Baltimore, Maryland, for Appellee.
 D.Md.
 AFFIRMED.
 Before WILKINS, NIEMEYER, and LUTTIG, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Donald G. Rembold appeals from the district court's order denying his motion to suppress evidence. We affirm.
 
 
 2
 On July 15, 1991, a confidential informant alerted the Maryland State Police that Richard Pruitt and a white male intended to break into two pharmacies in Maryland between midnight and 6:00 a.m., on July 16th. They would be driving a blue Oldsmobile with Maryland rental car tags. The state police checked Pruitt's arrest record and found that he had been arrested for a number of violent crimes.[1]
 
 
 3
 The Maryland State Police and Anne Arundel County Police set up a surveillance outside one of these pharmacies, the South River Pharmacy on Route 2. At approximately 3:00 a.m., Officer Hawkins of the Anne Arundel County police saw a blue Oldsmobile enter the pharmacy's parking lot and slowly drive around. Simultaneously, he also observed a marked state police car driving south on Route 2. Hawkins sent out a broadcast on his portable radio provided by the Maryland State Police, in an attempt to alert the nearby marked police car and other state police on the surveillance team. Unsure of whether the message was received, Hawkins contacted the county dispatcher to relay the message to the state police sergeants who were changing surveillance shifts at a nearby police station.
 
 
 4
 Hawkins then left the area of the pharmacy and proceeded northbound on Route 2, in the direction that the suspect vehicle had gone. At the intersection of Route 2 and Forest Drive, he saw that the blue Oldsmobile had been stopped by other members of the surveillance team.
 
 
 5
 Trooper Wisniewski of the state police had stopped the Oldsmobile with the assistance of several county police officers. Wisniewski had been travelling south on Route 2 in a marked car when he heard the broadcast that a blue Oldsmobile was at the pharmacy. He turned around and fell in behind a blue Oldsmobile a very short distance from the pharmacy. After following for several miles and calling in a description of the vehicle, its license number, and his location, Wisniewski was ordered to stop the vehicle. Wisniewski activated his lights and siren, and the other police vehicles did likewise. When the Oldsmobile pulled onto the shoulder, the four police vehicles blocked its escape. The officers approached the Oldsmobile with their weapons drawn.
 
 
 6
 Wisniewski approached the rear of the vehicle in a crouched position, opened the rear door, took out the passenger, told him to lie on the ground, and patted him down for weapons. Trooper Faggio took responsibility for the driver, Richard Pruitt; while Trooper Hughes assumed responsibility for Rembold, the passenger.
 
 
 7
 Hughes approached the passenger side of the Oldsmobile and ordered Rembold out of the vehicle. Rembold complied and followed Hughes' order to lie on the ground. Hughes patted him down and found a loaded .22 caliber Freedom Arms revolver in Rembold's right front pocket. In Rembold's left front pocket were eighty-two Percocet tablets and $631. A canister of chemical mace was on his belt. Rembold was placed under arrest.[2]
 
 
 8
 Rembold was charged with one count of possession of a firearm after being convicted of a felony, 18 U.S.C.A. § 922(g) (West Supp. 1993). He filed a motion to suppress the evidence of the firearm, alleging that the police conducted an improper search and arrest.
 
 
 9
 At the close of testimony at the suppression hearing, Rembold argued that the officers stopped the wrong car, that the officers intended to and did arrest the passengers of the vehicle prior to conducting the search or "pat down," and that the officers searched the vehicle and then searched the passengers.
 
 
 10
 The district court found that the vehicle stopped was the blue Oldsmobile which was observed in the pharmacy parking lot and held that even if it were not the same, Wisniewski reasonably and in good faith believed that it was. The court also held that if the officers stopped the vehicle subjectively intending to arrest the occupants, the intent to arrest is only a factor in the objective determination of whether the stop constituted an investigatory stop under Terry v. Ohio, 392 U.S. 1 (1968), or an arrest. The court found that the occupants of the Oldsmobile were patted down prior to the car being searched. The court concluded that the officers made a valid Terry stop, they did not exceed the scope of a Terry stop, and the stop was not elevated into an arrest by the level of force used. Rembold's motion to suppress was denied.
 
 
 11
 Rembold entered a plea of guilty conditioned upon his right to appeal the denial of his motion to suppress. Rembold was sentenced on March 1, 1993. A timely notice of appeal was filed on March 3, 1993. On appeal, Rembold contends that the level of force used exceeded the limits of a permissible Terry stop and converted the stop into an arrest for which no probable cause existed, and therefore the evidence should have been suppressed.
 
 
 12
 Police officers may stop a vehicle upon a reasonable and articulable suspicion that the occupants are involved in past or present criminal activity. See United States v. Hensley, 469 U.S. 221, 226 (1985); United States v. Mobley, 699 F.2d 172, 173-76 (4th Cir.), cert. denied, 461 U.S. 909 (1983). In this case, the officers had received a tip that Pruitt, a white male, and another white male planned to burglarize two area pharmacies between midnight and 6:00 a.m. They were further informed that the individuals would be driving a blue Oldsmobile with Maryland rental tags and that Pruitt may be armed. The tip was partially corroborated by Pruitt's arrest record, which revealed that he had been arrested for numerous violent felonies. The tip was further corroborated by the officers' observations. At 3:00 a.m., a blue Oldsmobile with Maryland dealer tags entered the parking lot of one of the target pharmacies and drove through the lot as if casing the pharmacy. Before stopping the vehicle, an officer observed that the occupants of the vehicle were white males. This corroboration of the informant's tip provided the officers with the articulable suspicion to stop the vehicle. See Hensley, 469 U.S. at 226; see also Alabama v. White, 496 U.S. 325 (1990); United States v. Miller, 925 F.2d 695, 699 (4th Cir.), cert. denied, 60 U.S.L.W. 3259 (U.S. 1991).
 
 
 13
 Having made an authorized, investigatory stop of the vehicle, the officers were authorized to conduct a limited frisk search of the occupants of the vehicle, if there was reason to believe the occupants were armed and dangerous. See Pennsylvania v. Mimms, 434 U.S. 106, 111-12 (1977); Adams v. Williams, 407 U.S. 143, 146 (1972); United States v. Crittendon, 883 F.2d 326, 328 (4th Cir. 1989).
 
 
 14
 Based upon the evidence, we find that the officers had reason to believe that the occupants of the vehicle were armed and dangerous, and that the level of force used was reasonable under the circumstances to maintain the status quo and protect the officers' safety. See United States v. Sinclair, 983 F.2d 598 (4th Cir. 1993); Crittendon, 883 F.2d at 329; United States v. Taylor, 857 F.2d 210, 213-14 (4th Cir. 1988); United States v. Perate, 719 F.2d 706, 708-09 (4th Cir. 1983); see also United States v. Moore, 817 F.2d 1105, 1108 (4th Cir.), cert. denied, 484 U.S. 965 (1987) (quoting Terry v. Ohio, 392 U.S. at 33 (Harlan, J., concurring), " 'There is no reason why an officer, rightfully but forcibly confronting a person suspected of a serious crime, should have to ask one question and take the risk that the answer might be a bullet' ").
 
 
 15
 In conclusion, we find that the officers' actions did not exceed the scope of a permissible Terry stop and that the force used in executing the Terry stop did not convert the stop into an arrest. Because the firearm was discovered during a lawful investigatory stop and frisk, suppression of the evidence was not warranted. We therefore affirm the decision of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 The State Police did not know the dispositions of these offenses
 
 
 [2]
 At the suppression hearing, Hughes testified that had he found nothing on Rembold, he would have released him at the scene