48 F.3d 1217
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Lobe Hope MARTIN, Defendant-Appellant.
 No. 94-5606.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 3, 1995.
Decided March 6, 1995.
 
 ARGUED: Gregory Bruce English, ENGLISH & SMITH, Alexandria, Virginia, for Appellant. William P. Joyce, Special Assistant United States Attorney, Alexandria, VA, for Appellee. ON BRIEF: Helen F. Fahey, United States Attorney, Alexandria, Virginia, for Appellee.
 Before HAMILTON and LUTTIG, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 After a bench trial on stipulated facts, Lobe Martin (Martin) was convicted of misusing a passport in violation of 18 U.S.C.A. Sec. 1544 (West 1984), and using a fraudulently obtained temporary resident alien stamp in violation of 18 U.S.C.A. Sec. 1546 (West Supp.1994). Martin timely appeals his convictions, contending the district court erred in refusing to admit his proffered evidence tendered to establish a justification defense.[1] We affirm the judgment of the district court.
 
 I.
 
 2
 On April 6, 1994, Martin, purporting to be Francis Tenga Torman, exited Air France flight 024 from Paris, France, at the Dulles International Airport, in the United States. The flight had originated in Yaounde, Cameroon, with a six hour layover in Paris. Upon landing in the United States, Martin presented a United Republic of Cameroon passport bearing the name Francis Tenga Torman to an Immigration and Naturalization Service (INS) Inspector who was checking the validity of passports. The INS Inspector noticed that the photograph in the passport presented by Martin was not Martin.
 
 
 3
 The INS Inspector sent Martin to a secondary INS inspection area for a more detailed review of his passport. The secondary inspection revealed not only the discrepancy with the photograph, but also that Martin was unable to answer basic questions regarding his entry into the United States. Eventually, Martin admitted that his real name was Lobe Hope Martin, the passport and resident alien stamp within the passport were not his, and he had found them at the Cameroon International Airport. At trial, the government proffered evidence, to which Martin stipulated as true, that the ticket used by Martin was a one-way ticket, purchased in Alexandria, Virginia, by Francis Tenga Torman and mailed to Martin in Cameroon. At no time prior to his arrest did Martin indicate an intention of seeking political asylum in the United States.
 
 
 4
 Martin was charged in a two-count indictment with misusing a passport in violation of 18 U.S.C.A. Sec. 1544 (West 1984), and using a fraudulently obtained temporary resident alien stamp in violation of 18 U.S.C.A. Sec. 1546 (West Supp.1994). As a defense to these charges, Martin intended to introduce evidence establishing his justification for illegally entering the United States. Martin testified that he was a victim of political oppression in Cameroon because he had opposed the regime in power and had worked to make his country more democratic. Martin testified further that he had been repeatedly arrested and savagely beaten by the police for protesting the current regime; he was actively being sought by the police immediately before leaving Cameroon for the United States; he reasonably believed that he would be killed once the police found him; and he had obtained and used the passport and visa belonging to Torman out of necessity to save his own life.[2]
 
 
 5
 Prior to Martin's trial, the government filed a motion in limine seeking to prohibit Martin from introducing this evidence in an attempt to establish a justification defense. The district court granted the government's motion in limine, concluding that Martin proffered insufficient evidence to support a justification defense. After the district court agreed that Martin's objection to the grant of the motion in limine would be preserved for appeal, Martin waived his right to a jury trial, whereafter, the district court conducted a bench trial on stipulated facts. The district court found Martin guilty of both misusing a passport and fraudulently using a resident alien stamp. Martin was sentenced to time served [April 6 through August 3, 1994] and one year of supervised release. Martin appeals.
 
 II.
 
 6
 Martin contends that the district court committed reversible error when it granted the government's motion in limine, which in effect precluded him from presenting any evidence supporting a justification defense based on his proffered evidence. We disagree.
 
 
 7
 In United States v. Crittendon, 883 F.2d 326 (4th Cir.1989), we applied a four-prong test for determining whether a defendant is entitled to a justification defense. Under Crittendon, a defendant is not entitled to the defense of justification unless: (1) the defendant was under unlawful and present threat of death or serious bodily injury; (2) the defendant did not recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) the defendant had no reasonable legal alternative (to both the criminal act and the avoidance of the threatened harm); and (4) there was a direct causal relationship between the criminal action and the avoidance of the threatened harm. Id. at 330.
 
 
 8
 Applying this test, we conclude that the district court correctly granted the government's motion in limine because it is unquestionably clear that Martin failed to satisfy the third and fourth prongs of Crittendon. For the purposes of our discussion here, we will assume that Martin's proffered evidence met the first two of Crittendon 's four prongs.[3] As to the third prong, Martin did not need to enter the United States in order to escape the threat of death by his government's police. As the district court noted, the United States was not the first country where Martin had travelled before arriving from Cameroon. Martin had entered the United States via Paris where he had a six-hour airport layover. Certainly, Martin could have applied for political asylum in France. Martin's argument that he could not have remained in France because he did not have a visa is unpersuasive because a person does not need a visa for the country in which he is applying for political asylum. See 8 U.S.C.A. Sec. 1101(a)(42) (West Supp.1994); 8 C.F.R. Sec. 208.13-14(a). Furthermore, Martin's contention is disingenuous because even if he believed he would have been illegally present in France, he knew he would be illegally present in the United States because of his illegally held passport and temporary resident alien stamp. As noted earlier, at no time prior to his arrest did Martin indicate an intention of seeking political asylum in the United States. Finally, the fact that Martin had a ticket purchased in the United States and sent to him in Cameroon suggests a premeditated plan to come to the United States, not a last minute attempt to save his life.
 
 
 9
 As to the fourth prong, Martin failed to show that he was in immediate danger of death unless he entered the United States. Again, if all of Martin's contentions are true, he could have avoided the immediate danger of death if he would have remained in France. Because Martin's proffered evidence did not satisfy Crittendon 's third and fourth prongs, Martin was not entitled to a defense of justification. Therefore, the district court properly granted the government's motion in limine.
 
 III.
 
 10
 For the reasons set forth, the judgment of the district court is affirmed.
 
 AFFIRMED
 
 
 [1]
 In his brief, Martin also refers to this defense as the defense of necessity. Because Martin agrees with the government that the proper test for deciding this case is articulated in United States v. Crittendon, 883 F.2d 326 (4th Cir.1989) (Appellant's Br. at 14-15), which terms the defense as one of "justification," we treat Martin's appeal as one alleging that he was entitled to the defense of justification
 
 
 [2]
 The record contains two sworn statements by Martin attesting to these facts
 
 
 [3]
 As to the first two prongs of Crittendon, Martin's proffered evidence consists of his own uncorroborated testimony that: (1) he was being actively sought by the police immediately before he left Cameroon for the United States; (2) he reasonably believed that he would be killed once the police found him; (3) he was placed in the position of being sought by the police by advocating lawful changes to his country's government; and (4) such conduct was not reckless, and a state department report detailing human rights abuses in Cameroon during the relevant period