**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 96-4388

WILLIAM ROSCOE SAYLES, a/k/a Billy
R. Sayles,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                             No. 96-4389

JAMES EDWARD SPENCER, JR.,
Defendant-Appellant.

Appeals from the United States District Court
for the Southern District of West Virginia, at Charleston.
John T. Copenhaver, Jr., District Judge.
(CR-95-158)

Submitted: April 30, 1997

Decided: June 5, 1997

Before MURNAGHAN, WILKINS, and WILLIAMS,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Karyn M. Schmidt, Thomas L. Hawker, ROBINSON & MCELWEE, Charleston, West Virginia; Hunt L. Charach, Federal Public Defender, Edward H. Weis, First Assistant Federal Public Defender, Charleston, West Virginia, for Appellants. Rebecca A. Betts, United States Attorney, Monica K. Schwartz, Assistant United States Attorney, Charleston, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

William Roscoe Sayles and James Edward Spencer, Jr. (Defendants) appeal their convictions for conspiring to distribute and to possess with the intent to distribute cocaine base and aiding and abetting the distribution of cocaine base. We affirm.

I.

The Government's evidence established that Officers Henderson, Rinehart, Palmer and Randle of the Charleston, West Virginia Police Department were members of the "Focus Patrol," assigned to monitor high crime areas within the city's housing projects. Their efforts were concentrated on the Orchard Manor housing project. Officer Henderson had received information in the weeks prior to Defendants' arrests that there had been numerous complaints from residents regarding drug trafficking activity in the area.

On the night Defendants were arrested, the Focus Patrol was cruising through an area of Orchard Manor in an undercover vehicle when they noticed an unusual amount of activity. The officers observed an individual who attempted to flag them down a couple of times as they

2

made their passes through the area. The officers were aware that it was possible for "lookouts," individuals in or bordering the street, to direct potential drug customers to sellers and warn them of police presence. When the officers did not stop, the suspected lookout reacted by yelling "5-0," a code word for police.

The officers also observed individuals nearby in the stairway entrances to the three-level apartment buildings. The officers were aware based on their experience that drug dealers frequently loiter near the doorway of stairways while they conduct drug transactions so that they can disappear up the stairs into an apartment in case they need to avoid detection and arrest. The officers, therefore, decided to park at a point from which they could return on foot to the area.

When they returned to the area, they saw two males in the street, one of whom was the individual who had tried to flag them down. Officer Henderson then observed a sedan stop by the individual and noted conduct that made him believe that a drug transaction was taking place. Officer Palmer believed that the individual and the other male with him were both connected to the two individuals across the street in the doorway entrance to the stairwell of one of the apartment buildings. Officer Palmer recognized one of the individuals in the doorway as Sayles, a felon barred from the Orchard Manor housing project for life who, therefore, was trespassing. Officer Rinehart called for back-up and the four officers emerged from hiding.

Upon seeing the four officers, one of the individuals in the street ran into one of the buildings and up the stairwell with Officer Henderson in pursuit. Officer Randle detained the other individual in the street. Officers Palmer and Rinehart proceeded in the direction of Sayles and Spencer, who were standing in the entrance to an apartment building, and announced themselves as officers.

Officer Palmer, who had in the past issued five trespassing warrants against Sayles, moved forward to arrest Sayles for trespassing and take him into custody. Spencer ran up the stairway with Sayles following him. In the course of arresting Sayles, Officer Palmer directed Sayles to raise his hands. Sayles, however, who was approximately six feet and nine inches tall, failed to raise his hands and instead put them out to his side. Sayles's actions effectively partially

3

blocked the stairway on which he was standing so that he obstructed the path of any officer pursuing Spencer, who had run up the stairway. Officer Rinehart, who is five feet and eight inches, was able to pursue Spencer by ducking under Sayles's arms.

Officer Rinehart chased Spencer to the third floor of the apartment building where Officer Rinehart found Spencer with his back toward him, fumbling with something on a window sill, as though he were folding it over. Officer Rinehart ordered Spencer to put down what he had and put his hands in the air; Spencer did so. Officer Rinehart patted Spencer down for weapons and had him move over to the side with his hands raised in the air. Officer Rinehart then saw a disposable diaper on the window sill, which he unfolded and found two plastic bags of a substance which appeared to him to be crack cocaine. Subsequent testing revealed that the substance was 15.9 grams of crack cocaine. Officer Rinehart also seized $248 from Spencer.

Shortly after Officer Rinehart handcuffed Spencer, according to Officer Palmer, Sayles claimed that the drugs seized from Spencer belonged to him. Sayles also indicated that the individual or individuals pursued by Officer Henderson got away with a larger amount of drugs. Defendants were subsequently convicted and sentenced to ten years imprisonment and eight years of supervised release. On appeal, Defendants claim that: (1) there was no reasonable suspicion to justify Spencer's detention and the subsequent search of the diaper; (2) Sayles has standing to contest the legality of this search; (3) there was insufficient evidence to support their conspiracy conviction; and (4) the district court erred by not defining reasonable doubt to the jury.

II.

First, Defendants claim that the drugs seized from the search of the diaper should have been suppressed because there was no reasonable suspicion to justify Spencer's detention. We find, however, that the officer had an articulable reasonable suspicion to detain Spencer and conduct an investigatory search. Under Terry v. Ohio, 392 U.S. 1 (1968), an officer may stop and question an individual based upon "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at

4

21. If those facts also lead an officer to believe that the individual may be armed, then the officer may conduct a pat-down search for the limited purpose of detecting weapons. Id. at 27-29. In evaluating the validity of an investigative stop, a court must consider the totality of the circumstances, including the information known to the officers and any reasonable inferences to be drawn at the time of the stop. United States v. Cortez, 449 U.S. 411, 417-18 (1981); United States v. Crittendon, 883 F.2d 326, 328 (4th Cir. 1989).

In the present case, the evidence shows that the officers found Defendants in a high-crime area. See United States v. Lender, 985 F.2d 151, 154 (4th Cir. 1993) (holding that presence in a high-crime area is a factor which may raise reasonable suspicion to conduct a Terry stop). The officers had also received information about complaints from residents regarding drug trafficking activity, which they independently corroborated from their own observations that night. See Alabama v. White, 496 U.S. 325, 329-30 (1990) (holding that a corroborated tip from an informant may provide basis for reasonable suspicion); Crittendon, 883 F.2d at 328 (same). Next, the Focus Patrol began patrolling the Orchard Manor area that night at approximately 6 p.m. and the incident that led to Defendants' arrest--the suspected lookout attempting to flag them down--occurred at approximately 12:45 a.m. See Lender, 985 F.2d at 154 (stating that lateness of hour is factor which may raise reasonable suspicion to conduct a Terry stop). Further, the Focus Patrol had specific experience regarding detection of drug trafficking activity in the area where Defendants were arrested, they personally observed what they reasonably believed to be a drug transaction just before they approached Defendants, and Officer Palmer knew Sayles was trespassing. See Terry, 392 U.S. at 23 (holding that reasonable suspicion was partly based on law enforcement's experience with thievery); United States v. Turner, 933 F.2d 240, 244 (4th Cir. 1991) (holding that officer with experience in narcotics investigation had reasonable suspicion to stop and determine whether suspect was "cooking" drugs after observing her carry a cup of water out of store, walk to car, and lean over front seat as if to hide something). Further Defendants evaded the officers after the officers identified themselves as such. Sayles even tried to obstruct the pursuit of Spencer. Spencer was found fumbling with a diaper as though he were attempting to hide something. See United States v. Sharpe, 470 U.S. 675, 682-83 n.3 (1985) (holding that eva-

5

sive conduct is a factor that may give rise to reasonable suspicion); Lender, 985 F.2d at 154 (same). In light of the totality of the circumstances, Officer Rinehart had reasonable suspicion to detain Spencer. Thus, Officer Rinehart was entitled to conduct a limited search for weapons to protect himself. See Terry, 392 U.S. at 27-29. Because Spencer was fumbling with the diaper on the window sill when Officer Rinehart approached him, it was reasonable for Officer Rinehart to search the diaper for his own protection as Spencer may have concealed a weapon in the diaper, which was located close to him. Therefore, the district court correctly denied Defendants' motion to suppress. Because the search was valid, it is irrelevant whether Sayles has standing to contest the search.

Second, Defendants contend that there was insufficient evidence to support their convictions because there was no evidence that they engaged in an agreement to possess with the intent to distribute drugs. This court must uphold a jury verdict if, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. Blue, 957 F.2d 106, 107 (4th Cir. 1992). The Government enjoys the benefit of all reasonable inferences from the facts proved to facts sought to be established. United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982).

To establish a defendant's participation in an illegal drug conspiracy, "the Government must establish that: (1) an agreement to possess cocaine with intent to distribute existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became a part of this conspiracy." United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996) (en banc), cert. denied, 117 S. Ct. 1087. (The Government may use "circumstantial evidence and the context in which the circumstantial evidence is adduced," id. (citing Iannelli v. United States, 420 U.S. 770, 777 n.10 (1975)), to demonstrate a defendant's participation in a conspiracy and his knowledge of the conspiracy's objectives. If the defendant "`joins the conspiracy with an understanding of the unlawful nature thereof and willfully joins in the plan on one occasion, it is sufficient to convict him of conspiracy.'" Burgos, 94 F.3d at 858 (quoting United States v. Roberts, 881 F.2d 95, 101 (4th Cir. 1989)).

6

The Government's evidence showed that Defendants were present at approximately 1:00 a.m. in a high crime area. Sayles had been banned for life from the Orchard Manor housing project. Defendants were standing in an entrance to an apartment building near an individual whom the experienced police officers believed to be acting as a drug lookout. When the officers approached Defendants, they fled up a stairwell. Officer Palmer apprehended Sayles and told him to put his hands up. Sayles, however, spread his arms to his side in an attempt to obstruct the pursuit of Spencer. Spencer was found fumbling with a diaper in a window sill; the diaper contained 15.9 grams of cocaine base, some "rocked up" for individual sale. Also, Spencer had $248 in cash on him in various denominations. When Sayles realized that Spencer was apprehended, Sayles admitted that the drugs were his. Viewing the evidence in the light most favorable to the Government, a rational trier of fact could have found the essential elements of a conspiracy beyond a reasonable doubt.

Lastly, Defendants urge this court to overrule its prior holding that a trial court should not define reasonable doubt for a jury even on request from a defendant. However, this court has unequivocally admonished trial courts not to define reasonable doubt to a jury, absent a request from the jury. See United States v. Reives, 15 F.3d 42, 44-46 (4th Cir. 1994); United States v. Headspeth, 852 F.2d 753, 755 (4th Cir. 1988); United States v. Love, 767 F.2d 1052, 1060 (4th Cir. 1985).

III.

For the foregoing reasons, we affirm Defendants' convictions. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

7