COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Kelsey and McClanahan
Argued at Richmond, Virginia


PERRY DONNELL WHITAKER, II

                                            MEMORANDUM OPINION[*] BY

v.       Record No. 3232-03-2             JUDGE JAMES W. BENTON, JR.
                                            FEBRUARY 1, 2005

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
George F. Tidey, Judge

John B. Mann (Levit & Mann, P.C., on briefs), for appellant.

Eugene Murphy, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


Shortly before police officers arrived with a warrant to search a "residence . . . and all persons found within the residence," Perry Donnell Whitaker and two men exited the residence and drove away. Other officers stopped the car and detained the men while police officers searched the residence. After police officers found narcotics and a firearm in the residence, the officers detaining Whitaker arrested him and later read Whitaker his Miranda rights. Whitaker contends his incriminating statements were inadmissible at his trial because they were the product of an illegal arrest. For the reasons that follow, we hold that the judge did not err in denying the motion to suppress, and we affirm Whitaker's convictions.

I.

City of Richmond police officers obtained a warrant to search a residence in Henrico County. The warrant authorized the search of the "entire residence, curtilage, and all persons found

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

within the residence," and it listed various "things . . . to be searched for," including "cocaine," "paraphernalia used in the preparation, packaging, and distribution of cocaine," "fruits from the sale of cocaine," and "firearms or dangerous weapons." The warrant affidavit named Perry Whitaker and Daryl Byrd as being involved in the sale of cocaine at the residence. When the Richmond officers contacted Henrico County officers for assistance in serving the warrant, the Henrico officers said they would need to involve other units because of "the nature of . . . two individuals" mentioned in the warrant and their criminal connections. Later that day, officers from the two localities met, made a plan to execute the warrant, and began surveillance of the residence at 4:00 p.m.

Shortly after the surveillance began, an officer saw Whitaker arrive at the residence. Whitaker opened a side door with a key and entered. During the course of the next several hours, a Richmond officer observed numerous people enter and then leave the residence. A Henrico officer who was to assist in executing the warrant relieved the Richmond officer and began the surveillance before midnight. After midnight, this officer saw three men leave the residence. One of the men momentarily re-entered the residence, turned out the lights, and locked the door. All three men then entered a car and left the premises. The officer reported these events by radio to the supervising sergeant, who believed that one of them was likely Whitaker because the reports he had received indicated "all of the people that had gone in, all of them had come out," with the exception of Whitaker. The supervising sergeant directed Henrico or Richmond officers to stop the vehicle "at a spot where they could do it the safest," and he testified that the plan was to detain the men at the car and search the residence as quickly as possible.

A Richmond police officer stopped the car about one and a half miles from the residence, just as it entered the City of Richmond. He testified this was a stormy winter night, with rain and snow and with conditions requiring slow driving. Byrd was driving the car; Whitaker was the front

seat passenger; and Henry Jones was the backseat passenger. When the officer obtained Byrd's identification, he discovered that Byrd had three outstanding warrants for his arrest, two for felony violations and one for a misdemeanor. The officer then arrested Byrd and searched the car. After the officer discovered a small bag of marijuana in the front seat console, he arrested Byrd for it. During the detention, the officer also put handcuffs on Whitaker.

While these events were occurring, other officers were searching the residence. Inside the residence, the officers discovered marijuana, cocaine, and a nine-millimeter handgun. Thirty minutes after the officers stopped the car, the officers searching the house informed them of the discovery of narcotics and the gun. The officers arrested Whitaker and the other men for the narcotics found in the residence and took them to a police station. At the station, the police officers informed Whitaker of his <u>Miranda</u> rights. Whitaker then made incriminating statements about the items the officers discovered at the residence.

Over Whitaker's objections, the trial judge admitted Whitaker's statements into evidence. At the conclusion of the evidence, the trial judge convicted Whitaker of possession with intent to distribute more than one half ounce but less than five pounds of marijuana in violation of Code § 18.2-248.1, possession with intent to distribute cocaine in violation of Code § 18.2-248, and possession of a firearm while in possession of a controlled substance in violation of Code § 18.2-308.4.

II.

Whitaker contends the officers did not "have the constitutional right to stop the motor vehicle . . . and arrest him without probable cause." He further contends his statements should have "been suppressed . . . because they were the product of an illegal arrest."

In our resolution of these issues, we apply the following standards:

> In reviewing a trial court's denial of a motion to suppress, "[t]he burden is upon [the appellant] to show that th[e] ruling,

> when the evidence is considered most favorably to the Commonwealth, constituted reversible error." "Ultimate questions of reasonable suspicion and probable cause . . ." involve questions of both law and fact and are reviewed *de novo* on appeal. In performing such analysis, we are bound by the trial court's findings of historical fact unless "plainly wrong" or without evidence to support them . . . . We analyze a trial judge's determination whether the Fourth Amendment was implicated by applying *de novo* our own legal analysis of whether based on those facts a seizure occurred.

McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (*en banc*) (footnote and citations omitted).

Under the Fourth Amendment, a police officer may stop an automobile upon a reasonable, articulable suspicion that "an occupant is . . . subject to seizure for violation of the law." Bass v. Commonwealth, 259 Va. 470, 475, 525 S.E.2d 921, 923-24 (2000) (citing Delaware v. Prouse, 440 U.S. 648, 663 (1979)). If reasonable suspicion exists, then the police officer may briefly detain that person to "investigate the circumstances that provoke suspicion." Berkemer v. McCarty, 468 U.S. 420, 439 (1984) (holding a police officer may detain a vehicle on less than probable cause if he "reasonably . . . suspect[s] that a particular person has committed, is committing, or is about to commit a crime"). Put simply, Terry principles apply when the police have a reasonable basis to detain a person who is traveling in a car. United States v. Arvizu, 534 U.S. 266, 273 (2002).

The factual circumstances of this case are virtually identical to those in Williams v. Commonwealth, 4 Va. App. 53, 354 S.E.2d 79 (1987). In that case, police officers obtained a warrant to search the residence of Steve Frazier, where an informant alleged Williams was distributing cocaine. As officers were in route to the residence, other officers surveilling the residence notified the supervisor that Williams was leaving. On the supervisor's orders, the officers stopped Williams's car about four blocks from the house. Id. at 59, 354 S.E.2d at 83. The officers "did not have an arrest warrant for Williams or a search warrant for his car . . . [and]

- 4 -

had not observed Williams breaking the law." Id. They returned Williams to the residence and later arrested him after they discovered cocaine and other drug paraphernalia inside the residence. Id. at 60, 354 S.E.2d at 83. We held that the stop and detention were permissible under Terry v. Ohio, 392 U.S. 1 (1968), reasoning as follows:

> [T]he officers who detained Williams clearly possessed sufficient articulable facts to support a reasonable suspicion that Williams was, or had been, engaged in criminal activity. Officer Tamez had been informed that Williams was in possession of contraband and that he was engaged in distribution of that contraband. Further, Tamez had a search warrant for the residence from which Williams was said to be carrying on this activity and from which Williams had departed moments earlier. Tamez also knew that Williams had a history of drug related offenses. We hold that this information provided Tamez with a sufficient basis to order that Williams be briefly detained for questioning under the authority of Terry.

Williams, 4 Va. App. at 65, 354 S.E.2d at 85-86.

Whitaker argues that the circumstances in this case distinguish Williams. In particular, Whitaker points on brief to the following:

> Williams had been identified in the search warrant and was identified by the police officers when he exited the house. Williams had a previous history of drug convictions. When Williams was stopped and detained, a large amount of money was found on his person. After he was stopped, Williams voluntarily agreed to return to the house. Williams was not handcuffed or arrested during the stop and voluntarily agreed to return to the residence that was the subject of the search warrant.

Whitaker contends that, unlike in Williams, he "was obviously under arrest when he was handcuffed and placed in the police vehicle" during the stop of the car. We disagree because the facts surrounding Whitaker's detention do not establish an arrest and, furthermore, present no basis for reaching a different conclusion than in Williams.

Before addressing Whitaker's argument, we initially note that the search warrant described the "place, person, or thing to be searched . . . as . . . [t]he entire residence, curtilage and *all persons found within* the residence." (Emphasis added). Whitaker did not contend at

trial and presents no question on appeal asserting that the search warrant was unlawful. Although he asserts in his reply brief that the warrant may be deficient for failing to satisfy the "particularity requirement," and thus indirectly suggests the invalidity of the search warrant, Rule 5A:18 bars our consideration of this argument for the first time on appeal.

We further note that the search warrant's affidavit provides that the material facts supporting probable cause for the search include the following:

> [A] confidential reliable Informant . . . was at [the residence] within the past 72-hours and saw crack cocaine packaged for sale. The [informant] also stated that while the [informant] was present . . . the [informant] saw crack cocaine exchanged for U.S. currency.
>
> The [informant] described two individuals involved in the illegal activity:
>
> Suspect 1 . . . identif[ied] as Daryl Mimacarli BYRD . . . .
>
> Suspect 2 . . . identif[ied] as Perry Donnell WHITAKER, AKA Tremayne Lewis BRONCE . . . .

The warrant information and the observations of the officers combined to provide reasonable suspicion to stop the car in which Whitaker was a passenger and detain its occupants. As in Williams, a neutral and detached magistrate had made the critical determination that probable cause existed to believe the accused conducted criminal activity at the residence and issued the search warrant. In addition, the warrant in this case authorized the officers to search all persons within the residence for drug dealing, and it cited both Whitaker and Byrd as being involved in the distribution of cocaine at the residence. Adding to the informant's personal knowledge that supported the issuance of the warrant, the officer in this case saw ongoing activity during the surveillance of the residence preparatory to the search, that suggested drug distribution was occurring at the residence. Furthermore, the evidence proved that as the officers were preparing to execute the search warrant, Whitaker left the residence (which was to be

searched). Before leaving the residence in a car driven by Byrd, one of the men turned off the lights in the residence and locked the door, indicating control of the premises.

In view of these circumstances, when the police stopped the vehicle shortly after it left the residence, they had more than a mere informant's tip to support the investigation and detention. See Adams v. Williams, 407 U.S. 143, 147 (1972) (holding that an informant's tip may be sufficient to support a Terry stop). The officers also had a search warrant authorizing the search of persons on the premises the men had just left and secured with a key. They knew Whitaker and Byrd were specifically named as persons associated with the drugs in the residence. They saw activity suggestive of drug dealing at the residence. We hold, therefore, that the stop of the car was supported by the officer's reasonable suspicion that the occupants were engaging in drug dealing.

The officers' use of handcuffs during this Terry stop did not *ipse dixit* convert the encounter into an arrest. United States v. Crittendon, 883 F.2d 326, 329 (4th Cir. 1989). The issue to be resolved is whether "the methods of restraint are reasonable to the circumstances." Id. The evidence indicates the Henrico police officers had determined based on their knowledge of Byrd and Whitaker that the execution of the warrant required extra precautions. After the supervisor told the officers to stop the car at a safe place, they stopped it after it traveled only one and a half miles. Once the police stopped the car, the officer discovered that Byrd, the driver, had two outstanding warrants for felony violations, and another for a misdemeanor violation. The officer then arrested Byrd. During an inventory search of the car, police discovered marijuana in the front seat console. While this was occurring, the police officers were detaining Whitaker at the direction of the supervising officer and had not arrested Whitaker for any offense. After the officers arrested Byrd on outstanding warrants and found marijuana secreted in the car, the officers could require everyone to exit the car. See Maryland v. Wilson, 519 U.S.

- 7 -

408 (1997). In view of information known to the officers about the residence, about Whitaker's and Byrd's connection to the residence, and the warrant's authorization to search any person found within the residence they had just left, the officers did not act unreasonably in putting handcuffs on Whitaker during this Terry detention. We hold that the record fails to support Whitaker's assertion that the officer initially arrested, and not just detained, him.

The evidence also does not suggest that police detained Whitaker for an unreasonable length of time. In addition, to the warrant information about narcotics, the officer now had discovered marijuana in the car and arrested the driver. As the officers were preparing to tow and inventory the car, and before a half hour had elapsed, the officers learned that other officers had discovered cocaine, marijuana, and a firearm during the search of the residence. After only a detention of thirty minutes, the investigation resulted in probable cause to arrest Whitaker. In summary, we hold the totality of these facts establish that the officer's use of handcuffs and detention of Whitaker in the police vehicle were not unreasonable restraints to use during this investigative detention, that the length of the detention was not unreasonable, and that the officers did not arrest Whitaker until the drugs were found in the residence.

Whitaker further argues that "[t]he Commonwealth cannot justify [his] arrest under the holding in Michigan v. Summers, 452 U.S. 692 (1981)." Recognizing first that the facts in this case present circumstances of a detention, not an arrest, we note that Summers gives police a limited right to detain the occupants of a premises to be searched, based on three rationales: to minimize risk of violence from the occupant, to assist in the warrant's orderly execution, and to prevent the defendant's flight in case incriminating evidence is found. 452 U.S. at 702-03. The Court reasoned that the detention in Summers was reasonable under the Fourth Amendment because the detention represented only an "incremental intrusion" of personal liberty when the search of the home had been authorized by a valid warrant. Id. at 703.

This case presents two factual circumstances beyond those disclosed in <u>Summers</u>. First, the search warrant in this case specifically identified Whitaker and Byrd as being "involved in the illegal activity" at the residence. Thus, the police officers knew from the warrant that Whitaker had a connection to the residence directly concerning the drugs. They did not require him to return to the residence; they did not search him. They detained him for a short time and they did not question him until they had probable cause to arrest him and had, in fact, arrested him.

Second, unlike in <u>Summers</u>, the search warrant in this case authorized the search of the residence as well as "all persons found within the residence." The evidence proved Whitaker or one of the other men turned off the lights, locked the door and was the last person to leave the residence before the search warrant was executed. When Whitaker left the residence, the supervising officer directed the police to stop the vehicle "at a spot where they could do it the safest," because of the rain and snow. The officers stopped Whitaker, who was specifically named in the warrant, within one and a half miles from the residence. Because we hold that the record reasonably established that the officers stopped the car upon reasonable suspicion to detain the occupants and that they did not act unreasonably when they detained the car and its occupants, we need not further discuss Whitaker's <u>Summers</u> claim.

For these reasons, we hold that in view of the totality of the circumstances, the officers had reasonable suspicion to investigate possible criminal activity by stopping the car. Thus, the police officers lawfully detained Whitaker at the car and only arrested him after the cocaine and gun were discovered in the residence. Following his arrest, Whitaker received <u>Miranda</u> warnings and then made incriminating statements. Whitaker's statements, made after proper <u>Miranda</u> warnings, were admissible evidence. Thus, the trial judge did not err in denying the motion to suppress.

We, therefore, affirm the convictions.

Affirmed.