**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.                                    No. 00-4282

ROBERT LEWIS BROWN,
        *Defendant-Appellant.*

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Frederic N. Smalkin, District Judge.
(CR-99-423)

Argued: February 28, 2001

Decided: March 15, 2001

Before MICHAEL, MOTZ, and TRAXLER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Beth Mina Farber, Assistant Federal Public Defender, Baltimore, Maryland, for Appellant. Andrew George Warrens Norman, Assistant United States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** James Wyda, Federal Public Defender, Baltimore, Maryland, for Appellant. Lynne A. Battaglia, United States Attorney, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

## OPINION

PER CURIAM:

In this appeal, Robert Lewis Brown challenges his conviction for
being a felon in possession of a firearm in violation of 18 U.S.C.
§ 922(g)(1) (1994) on the ground that the district court erroneously
denied his request for a jury instruction on the defense of justification.
We affirm.

### I.

In May 1999, Janiece Miller and her son, Willie Forrest, lived with
Gloria Miller, Janiece's mother, in a Baltimore apartment. Gloria did
not approve of her daughter's boyfriend, Leonard Swanigan; in fact,
because Swanigan assertedly had abused Janiece and Willie, Gloria
forbade her daughter from inviting Swanigan into the apartment.

Nevertheless, on May 13, 1999, while Gloria was at work, Janiece
allowed Swanigan into the apartment. That night, at approximately
8:00 p.m., Gloria called the apartment and spoke to Willie, her grand-
son, who informed her of Swanigan's presence. Gloria asked to speak
with her daughter and, once Janiece was on the line, ordered her to
tell Swanigan to leave the apartment immediately. Janiece complied
with her mother's demand and Swanigan left the apartment some time
after 8:00 p.m.

Concerned about her daughter and grandson's well-being, Gloria
called her brother, Robert L. Brown, and asked him to go to the apart-
ment to ensure that Swanigan had vacated the premises. Brown com-
plied and arrived at the apartment well before 9:00 p.m. Once inside,
Brown confronted his niece, Janiece, about inviting Swanigan into the
apartment. A heated argument erupted during which Brown assertedly
struck Janiece. At various times during Brown's visit, Janiece called
911 for help. At one point, while Janiece was on the phone with an

emergency operator, Willie exclaimed that Brown had a gun. Janiece reiterated Willie's observation to the 911 operator. At trial, Janiece testified that she did not see a gun, but that she heard "something hard hit the floor" before her son cried out.

Police officers arrived at the apartment around 9:00 p.m., but Brown was no longer there. They spoke with Janiece briefly, obtained a physical description of Brown and his car, ensured that the apartment was safe, and then left to comb the surrounding neighborhood for Brown. A few minutes later, Brown reappeared at the apartment, knocked on the door, and, when Janiece answered, suggested that she talk to him. Janiece refused and Brown left again. Janiece again called 911.

Thereafter, police officers found Brown reclining in his car with the seat back on a nearby street. They questioned Brown briefly and, after determining his identity, asked him to step outside of his car. When Brown opened the car door, the interior light illuminated, revealing a handgun protruding from under the driver's seat. The police officers arrested Brown and confiscated the handgun at approximately 9:20 p.m. During the arrest, Brown stated that the gun belonged to his niece's boyfriend and that he had taken it from the boyfriend during an altercation.

Brown was indicted and tried for violating 18 U.S.C. § 922(g)(1), which provides, in relevant part, that "[i]t shall be unlawful for any person[,] who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year[,] to . . . possess in or affecting commerce, any firearm." At the close of the evidence, Brown's counsel requested a jury instruction on the defense of justification. The district court rejected the request, finding that there was insufficient evidence to warrant the instruction. Brown appeals that ruling.

## II.

To assert a justification defense to a § 922(g)(1) charge a defendant must provide evidence from which a factfinder could conclude that: (1) he was under unlawful and present threat of death or serious bodily injury; (2) he did not recklessly place himself in a situation where

he would be forced to engage in criminal conduct; (3) he had no reasonable legal alternative (to both the criminal act and the avoidance of the threatened harm); and (4) there was a direct causal relationship between the criminal action and the avoidance of the threatened harm. *See United States v. Perrin*, 45 F.3d 869, 873-74 (4th Cir. 1995) (citing *United States v. Crittendon*, 883 F.2d 326, 330 (4th Cir. 1989)). As a general rule, "a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Matthews v. United States*, 485 U.S. 58, 63 (1988). But a defendant must present sufficient evidence to create a jury issue as to all four elements to obtain a justification instruction.

Brown did proffer some evidence as to the second element, that he did not "recklessly place himself in a situation where he would be forced to engage in criminal conduct." On this point, Brown offered the testimony of his sister, Gloria Miller, who stated that Brown went to the apartment at her request and the testimony of his wife, who stated that Brown did not leave their home with a gun. The district court held that "[t]here's [sic] some evidence that if he went there, that he did not recklessly do so." The government does not rebut the court's finding. Thus, we find that Brown has satisfied the second element of the *Perrin* test. However, Brown has failed to meet his burden as to any of the other elements.

As to the first element, that he was under an unlawful, present threat of death or serious bodily injury, Brown contends that he acted to protect Janiece and Willie from Swanigan's abuse. To be sure, a defense of justification, and thus a justification instruction, is available to a defendant who violates § 922(g)(1) in order to protect a third party under threat of death or serious bodily injury. *See United States v. Newcomb*, 6 F.3d 1129, 1135-36 (6th Cir. 1993) (finding that defendant who disarmed his girlfriend's son to protect a third party may assert the defense). However, the defendant bears the burden of proving that a threat of death or serious bodily injury actually existed, thus compelling the § 922(g)(1) violation. Here, Brown has proffered insufficient evidence even to create a jury issue on this question.

Brown relies on the testimony of his wife, Wanda, that when he left for the apartment on the night of May 13, 1999, he was not carrying

a gun, and on the testimony of his sister, Gloria, that Swanigan had abused her daughter, Janiece, and her grandson, Willie, and that she had sent Brown to the apartment to prevent Swanigan from harming anyone there. Although Brown did not testify at his trial, he also relies on his statements made to the police during his arrest that he had obtained the gun from Swanigan in an altercation.

This evidence provides an insufficient basis to find that an altercation occurred between Brown and Swanigan in which Brown acted to minimize the threat of death or serious bodily injury to his niece or her son. None of the evidence adduced at trial establishes that Brown and Swanigan ever came in contact with one another on the night of his arrest. Indeed, when the police arrived at the apartment in response to Miller's 911 calls, neither Brown nor Swanigan were anywhere to be found. Brown's counsel even concedes that Janiece, Willie, and Swanigan testified that Swanigan had left the apartment before Brown arrived. Brief of Appellant at 7 n.3.* Moreover, Brown's own statement during his arrest is self-serving and, absent cross-examination, unreliable.

We note that the cases on which Brown relies are distinguishable. For example, in *United States v. Newcomb*, 6 F.3d 1129, 1131 (6th Cir. 1993), the defendant, his girlfriend, and his friend testified that the defendant was watching television when his girlfriend entered the room and told him that her son had just grabbed a gun and ran outside, threatening to kill someone. The defendant then pursued his girlfriend's son and confiscated and disposed of the gun. *Id.* Similarly, in *United States v. Paolelo*, 951 F.2d 537, 539 (3d Cir. 1991), the defendant and his stepson testified that a man struck the stepson in a bar and that the defendant wrestled a gun away from the assailant to protect his stepson. Thus, in both *Newcomb* and *Paolello*, the defendant not only testified at trial as to the specific life-threatening event that forced him to violate the law, but also had additional witnesses testify to the same on his behalf. Here, in contrast, neither Brown nor

---

*Although we recognize the theoretical possibility that Brown and Swanigan could have crossed paths somewhere outside the apartment after Swanigan had left and before Brown had arrived, e.g., on the stoop or in the street, Brown has failed to offer even a scintilla of evidence to support a finding that such a scenario occurred.

any other witness presented first-hand testimony regarding the alleged altercation with Swanigan. For these reasons, we must conclude that Brown failed to offer sufficient evidence to create a jury question on the first element of the *Perrin* test.

Brown also failed to offer sufficient evidence, as to the third element, that he had "no reasonable legal alternative" to fighting and disarming Swanigan. Put simply, without sufficient evidence that an altercation occurred, there can not be sufficient evidence that Brown lacked a reasonable alternative to avoiding a violation of § 922(g)(1). *See United States v. Holt*, 79 F.3d 14, 17 (4th Cir. 1996) (requiring defendants seeking a self-defense instruction to provide "evidence demonstrating a lack of reasonable legal alternatives to committing the crime").

Moreover, even assuming that the alleged altercation did take place, Brown's continued possession of the handgun after the asserted threat of death or serious bodily injury had dissipated, without attempting to contact the authorities or safely dispose of the gun, negates any possible satisfaction of this element. *See United States v. Mason*, 233 F.3d 619, 624-25 (D.C. Cir. 2001) ("[I]t is the retention of [a firearm], rather than the brief possession for disposal . . ., which poses the danger which is criminalized by felon-in-possession statutes.") (internal quotation marks omitted). Police officers found Brown in his car around 9:20 p.m., approximately twenty minutes after they arrived at the apartment in response to Janiece Miller's 911 calls; Willie noticed that Brown had a gun before the police arrived; and prior to Willie's observation, Brown and Janiece Miller had been engaged in a hostile argument for a period of time. Thus, Brown was in possession of the firearm for at least twenty minutes without attempting to rid himself of it. Accordingly, Brown failed to proffer sufficient evidence to create a jury question as to the third element of the *Perrin* test.

Finally, because Brown has failed to demonstrate that an altercation with Swanigan took place, there can be no direct causal link between the act of disarming Swanigan and the avoidance of harm to Janiece Miller and her son. Thus, Brown also failed to offer sufficient evidence to create a jury question as to the fourth element of the *Perrin* test.

### III.

Accordingly, the judgment of district court is

*AFFIRMED*.