PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

JAMES RICHARD RICKS,

*Defendant-Appellant.*

No. 07-5127

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Robert J. Conrad, Jr., Chief District Judge.
(3:06-cr-00134-RJC-CH-1)

Argued: March 26, 2009

Decided: July 20, 2009

Before GREGORY and DUNCAN, Circuit Judges, and
Jackson L. KISER, Senior United States District Judge for
the Western District of Virginia, sitting by designation.

Reversed by published opinion. Judge Gregory wrote the
opinion, in which Judge Duncan and Senior Judge Kiser
joined.

## COUNSEL

**ARGUED:** Ross Hall Richardson, FEDERAL DEFENDERS
OF WESTERN NORTH CAROLINA, INC., Charlotte, North

Carolina, for Appellant. Adam Christopher Morris, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee. **ON BRIEF:** Claire J. Rauscher, Executive Director, Kevin Tate, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. Gretchen C. F. Shappert, United States Attorney, Charlotte, North Carolina, for Appellee.

---

**OPINION**

GREGORY, Circuit Judge:

James Richard Ricks was convicted in the United States District Court for the Western District of North Carolina for violating 18 U.S.C. § 922(g)(1) (2006), possession of a firearm by a convicted felon, and was sentenced to 180 months' imprisonment. At trial, the district court denied Ricks a jury instruction on a justification defense because the court did not believe the defense was available in this Circuit. Recognizing its legal error post-trial, the district court nonetheless denied Ricks' motion for a new trial because it found that Ricks had not presented sufficient evidence to warrant the instruction. We find that the district court's decision at trial to deny the instruction was not justified by either the law or the facts, because a reasonable trier of fact could have found that Ricks' possession was justified. We therefore reverse Mr. Ricks' conviction.

I.

In determining the sufficiency of the evidence to support a criminal defendant's request for a jury instruction on a theory of defense, "the testimony most favorable to the defendant should be accepted." *United States v. Al-Rekabi*, 454 F.3d 1113, 1121 (10th Cir. 2006) (internal quotation marks and citation omitted). The evidence presented at Ricks' trial, taken in the light most favorable to Ricks, established the following:

On the night of December 15, 2005, Ricks' partner, Clarence Blue, returned to their shared apartment after having disappeared for several days. Ricks noticed immediately that Blue was acting erratically—walking strangely and talking incoherently. Realizing that Blue had a gun in his hand, Ricks ran up to him, pinned him against the wall, and hit the gun out of his hand. Ricks then picked up the gun, removed the clip, and threw the gun and the clip in different directions. When Ricks stepped away from Blue, Blue ran out the door. Although Ricks shouted after him, Blue kept running and eventually got into his car and drove away.

After Blue left, Ricks retrieved the gun and clip from where he had thrown them and, without returning the clip to the gun, placed the pieces on top of a dresser, underneath some clothes, in the bedroom he and Blue shared. Ricks then went back into the living room and began to watch television. Fifteen to thirty minutes later, Blue returned to the apartment, this time accompanied by two police officers. According to Ricks, the officers asked repeatedly whether there was a gun in the house. Although Ricks did not respond immediately, he finally acknowledged that there was a gun in the house and took the officers into the bedroom, where he retrieved the gun and the clip and turned them over to the police. After Ricks admitted to a prior felony conviction, the officers took him into custody as a convicted felon in possession of a firearm.

At trial, Ricks' counsel argued that Ricks was entitled to a jury instruction on a justification defense. Initially, the district court agreed with counsel that, if a justification defense were available in this Circuit, the evidence that had been presented would have been "sufficient . . . to warrant the instruction." (J.A. 177.) However, because the court found that the Fourth Circuit had never concretely recognized a justification defense to violations of the felon-in-possession statute, 18 U.S.C. § 922(g)(1) (2006), it ultimately denied the instruction. Ricks was convicted on August 9, 2006.

While Ricks was awaiting sentencing, we published our decision in *United States v. Mooney*, 497 F.3d 397 (4th Cir. 2007), in which we found that the petitioner was entitled to relief under 28 U.S.C. § 2255 for ineffective assistance of counsel after his lawyer advised him that a justification defense was unavailable for a § 922(g) violation. The publication of *Mooney* prompted the district court to hold a sua sponte status conference on August 14, 2007, to consider the effect of *Mooney* on Ricks' case. At those proceedings, Ricks' attorney moved for a new trial. After briefing by both parties, the district court denied the motion on September 28, 2007. Inverting the position it took at trial, the court found that while *Mooney* made clear that a justification defense was available for § 922(g) violations, there was insufficient evidence to warrant a justification instruction in Ricks' case.

Ricks timely filed an appeal with this Court, in which he argues both that the district court's mid-trial decision not to allow a justification instruction was reversible error and, in the alternative, that its denial of his motion for a new trial was an abuse of discretion.

## II.

"[A] defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63 (1988). A district court's refusal to instruct the jury on such a defense presents a question of law that we review de novo. *United States v. Perrin*, 45 F.3d 869, 871 (4th Cir. 1995).

At Ricks' trial, the district court concluded that this Circuit had never explicitly recognized a justification defense and thus no jury instruction on that defense needed to be given. Ricks contends that this was reversible error because the instruction "'(1) was correct; (2) was not substantially covered by the court's charge to the jury; and (3) dealt with some

point in the trial so important, that failure to give the requested instruction seriously impaired [his] ability to conduct his defense.'" *United States v. Lewis*, 53 F.3d 29, 32 (4th Cir. 1995) (quoting *United States v. Camejo*, 929 F.2d 610, 614 (11th Cir. 1991)). The second and third prongs of the *Lewis* test are plainly met here, so for purposes of this appeal we need look only at prong one—whether the instruction was correct, meaning it was a correct statement of the law and it was supported by the evidence. *See United States v. Fiedeke*, 384 F.3d 407, 410 (7th Cir. 2004).

The district court concluded that a justification defense was not available as a matter of law in this jurisdiction because no prior controlling Fourth Circuit case law had explicitly recognized such a defense. Indeed, though a number of our decisions have hinted at the availability of the defense, our pre-*Mooney* case law has hardly been a font of clarity on the matter. *See, e.g.*, *United States v. Crittendon*, 883 F.2d 326, 329-30 (4th Cir. 1989) (acknowledging the defense and outlining its elements but finding no need to recognize the defense because the defendant could not satisfy those elements); *Perrin*, 45 F.3d at 873, 875 (noting that *Crittendon* had "adopted" a four-prong test for the defense and suggesting that "[c]onsistent with other circuits, we [would] *continue* to construe the justification defense for possession of a firearm by a felon very narrowly" (emphasis added)); *United States v. Rush*, 90 Fed. App'x 695, 698 (4th Cir. 2004) (per curiam) (declining "once again to reach the question of whether such a defense would be available if the defendant had satisfied each of its elements"). After repeatedly tipping our hat to the defense but finding that the defendants who sought to use it were unable to satisfy its requirements,[1] we finally clarified in

[1]*See United States v. Hillian*, 210 Fed. App'x 251, 252 (4th Cir. 2006) (per curiam); *United States v. Campbell*, 104 Fed. App'x 302, 303 (4th Cir. 2004) (per curiam); *United States v. Powell*, 42 Fed. App'x 565, 571 (4th Cir. 2002) (per curiam); *United States v. Brown*, 5 Fed. App'x 292, 295 (4th Cir. 2001) (per curiam); *United States v. Lindsay*, No. 00-4256, 2000 U.S. App. LEXIS 25376, at *1-2 (4th Cir. Oct. 11, 2000) (per curiam); *United States v. Poole*, No. 98-4231, 1998 U.S. App. LEXIS 32630, at *4-7 (4th Cir. Dec. 31, 1998) (per curiam).

*Mooney*, 497 F.3d 397, that the defense was available and acknowledged its applicability in that case.

Now, in *Mooney*'s wake, the government and Ricks apparently agree that the district court erred in finding that the defense was not available as a matter of law. (*See* Gov't Br. at 8 ("[T]he district court's initial reasoning – that *Perrin* and *Crittendon* did not allow a justification defense in this Circuit – appears to have been a legal error . . . ." (internal citation omitted)).) As *Mooney* explains, because justification is a common-law defense, "'Congress' failure to provide specifically for [it] in drafting a criminal statute does not necessarily preclude a defendant charged with violating the statute from relying on [that] defense.'" 497 F.3d at 403 (quoting *United States v. Panter*, 688 F.2d 268, 271 (5th Cir. 1982)). Moreover, "'[c]ommon sense dictates that if a previously convicted felon is attacked by someone with a gun, the felon should not be found guilty for taking the gun away from the attacker in order to save his life.'" *Id.* (quoting *United States v. Singleton*, 902 F.2d 471, 472 (6th Cir. 1990)). Given that there is no dispute between the parties that justification is available as a defense as a matter of law, we turn now to the question of whether, in Ricks' case, the evidence presented at trial was sufficient to warrant an instruction on the defense.

Although the government concedes that the court's reasoning on the general availability of the justification defense was erroneous, it argues that the district court's decision at trial to deny the justification instruction was nonetheless correct because the evidence did not support such an instruction. The district court reasoned similarly in its decision on Ricks' motion for a new trial. However, at trial, the district court took the view that there was sufficient evidence to support a jury instruction on justification, and we agree.

In *Crittendon*, we laid out the elements that a defendant would have to satisfy to be entitled to a justification instruction:

[T]he defendant must produce evidence which would allow the factfinder to conclude that he:

(1)   was under unlawful and present threat of death or serious bodily injury;

(2)   did not recklessly place himself in a situation where he would be forced to engage in criminal conduct;

(3)   had no reasonable legal alternative (to both the criminal act and the avoidance of the threatened harm); and

(4)   a direct causal relationship between the criminal action and the avoidance of the threatened harm.

883 F.2d at 330 (internal quotation marks and citation omitted).

Applying *Crittendon* at trial, the district court reasoned:

I think there is [sic] sufficient facts if believed by the jury that would show that—if Mr. Blue was believed, that he brought the gun to the house in an agitated state; that at the door there was a confrontation between Mr. Blue and the defendant and that the defendant took the gun from Mr. Blue. And prior to taking the gun, he would have been in a present threat of such a nature as to induce a well-grounded fear of death or serious bodily injury [*Crittendon* factor (1)]. . . . If Mr. Blue is believed, Mr. Ricks was just at the home that Mr. Blue had not been to for a number of days and so did not recklessly place himself in a situation where he would be forced to possess the gun [*Crittendon* factor (2)]. And at that point would not have had a reasonable legal alterna-

tive other than to struggle with Mr. Blue [*Crittendon* factor (3)]. And that there's a causal relationship between the possession and the elimination of the risk [*Crittendon* factor (4)].

(J.A. 185-86.)

Notwithstanding this, the government would now have us take the position that the district court took in its post-trial order denying Ricks' motion for a new trial. In that order, the district court about-faced and found that the evidence did not in fact support a justification instruction. While the court acknowledged that *Mooney* made clear that justification was an available defense in this Circuit, it went on to find that Ricks could not satisfy the third prong of the *Crittendon* test. The district court accepted that Ricks was arguably in imminent danger at the time he disarmed Blue, but it concluded that Ricks continued to possess the gun after that point although he "had other reasonable alternatives to continued possession of the gun." (J.A. 335.)

It is true that, after disarming Blue, Ricks briefly retook possession of the gun. Apparently understanding the gun to belong to Blue, Ricks picked up the gun and the clip from the floor and brought them to the bedroom he and Blue shared, where he placed them underneath some clothes on the dresser. As the government points out, courts have found that even such fleeting possession can be enough to show actual possession for purposes of § 922(g) liability. *See, e.g.*, *United States v. Adkins*, 196 F.3d 1112, 1115 (10th Cir. 1999). The question before us, however, is whether a reasonable finder of fact could have found that such possession was justified. *See Matthews*, 485 U.S. at 63. Had the jury properly been instructed on justification, it could very well have found Ricks' brief repossession to be a reasonable effort to place the gun out of harm's way. *See Mooney* at 407 (finding that "it is the retention of a firearm, rather than the brief possession for disposal . . . which poses the danger which is criminalized"); *cf.*

*Adkins*, 196 F.3d at 1115 ("[E]ven if a felon held a firearm for a mere second or two, unless that felon truly did not know that what he possessed was a firearm *or there was some recognized legal justification for his holding the firearm*, § 922(g) will still impose criminal liability." (emphasis added)); *United States v. Parker*, 566 F.2d 1304, 1306 (5th Cir. 1978) (finding that the fact that defendant continued to hold the gun in his hands for thirty minutes after threat dissipated defeated applicability of justification defense).

Perhaps recognizing that Ricks' brief actual repossession of the gun might still be covered by a justification defense, the government also argues that Ricks constructively possessed the gun from the time he placed it on the dresser until he turned it over to the police. But "[w]hen the government seeks to establish constructive possession under § 922(g)(1), it must prove that the defendant intentionally exercised dominion and control over the firearm, or had the power *and the intention* to exercise dominion and control over the firearm." *United States v. Scott*, 424 F.3d 431, 435-36 (4th Cir. 2005) (emphasis added). The record here does not allow us to conclude that the government proved that Ricks had the intent to exercise dominion and control over the gun at any point after he placed it on the shared dresser.[2] After leaving the bedroom, Ricks went into the living room and watched television until Blue and the police arrived at the apartment. Nothing in these

---

[2]Intent is an element of a § 922(g)(1) charge, whether possession is being proved with evidence of actual or constructive possession. *Scott*, 424 F.3d at 435. Thus, in order to find Ricks guilty of a § 922(g)(1) violation, the jury must necessarily have found an intentional possession of the gun. However, on this record it is unclear at what point the jury found an intentional possession. It is possible that the jury found intentional possession with respect to Ricks' immediate and actual possession as he disarmed Blue. With the benefit of a justification instruction, the jury could well have found that possession to be a nullity. Whether subsequent to that immediate possession, Ricks was guilty of continued possession under a constructive possession theory is a jury question that the Government must prove beyond a reasonable doubt. *See id.*

actions inherently suggests an intention to exercise dominion and/or control over the gun. *See United States v. Blue*, 957 F.2d 106, 108 (4th Cir. 1992) ("The mere proximity of a weapon to a [defendant] goes only to its accessibility, not to the dominion or control which must be proved to establish possession." (internal quotation marks and citation omitted)); *cf. United States v. Singleton*, 902 F.2d 471, 472-73 (6th Cir. 1990) (finding continued unjustified possession where, after alleged threat dissipated, defendant kept gun in his car while visiting a friend). Nor does the record support a conclusion that the jury found continued constructive possession from this conduct.

We agree with the government that "a defendant seeking a justification instruction must produce evidence that he took reasonable steps to dispossess himself of the weapon once the threat entitling him to possess it abated." (Gov't. Br. 10). We disagree, however, that Ricks has not met this burden. The evidence presented permits the conclusion that, after Ricks disarmed Blue, he took immediate steps to dispossess himself of the gun by placing it on the bedroom dresser.

Apparently reading our decision in *Mooney* as support for its position, the government implies that Ricks did not act reasonably to dispossess himself of the gun because he did not immediately turn it over to the police.[3] In *Mooney*, we found that the defendant would have been able to satisfy prong three of the *Crittendon* test because the evidence showed that after

---

[3]The government also suggests that a reasonable alternative would have been to leave the apartment, rather than retrieve the gun and place it on the dresser. However, Ricks was under no obligation to leave his own home simply to avoid being in the vicinity of a firearm. Section 922(g)(1) may, as the government puts it, "place[ ] a high burden on felons-in-possession seeking legal justification" (Gov't Br. 29), but it does not create criminal liability for a convicted felon who simply lives with someone who possesses a firearm. Moreover, it might well have been dangerous for Ricks to leave the gun on the floor where an upset Blue could easily have accessed it had he returned to the apartment.

he disarmed his intoxicated ex-wife, "[t]he trajectory of Mooney's actions all pointed toward handing over the gun to the police." 497 F.3d at 408. This conclusion, however, did not create a bright-line rule that the only reasonable way for a felon to dispossess himself of a gun he has justifiably come to possess is to turn that gun over to the police. Mooney's method of dispossession was a reasonable one, not the only reasonable one. Given the facts of this case, a reasonable trier of fact could find that Ricks' conduct was "necessary and efficient in disposing of the gun," *id.* at 407, because he took possession of the gun no longer than needed to avoid threatened harm from Blue and then dispossessed himself of the gun by placing it somewhere where Blue, the gun's owner, could retrieve it once in a better frame of mind.

In many cases, a defendant's options for reasonable dispossession of a firearm may include turning the gun over to the authorities, but that is not the only option, and ultimately, the reasonableness of the defendant's course of conduct is a question for a jury. For purposes of determining the propriety of a jury instruction on justification, we need only see whether there is sufficient evidence for a jury to conclude that the defendant's actions were reasonable, and we find that there was sufficient evidence here.

## III.

Having found that the district court committed reversible error by denying Ricks a jury instruction on justification at trial, we need not consider whether the district court abused its discretion in denying Ricks' motion for a new trial. Ricks' conviction for violation of 18 U.S.C. § 922(g)(1) is hereby reversed.

*REVERSED*