**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-5138**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

  v.

EDNA GORHAM BEY, a/k/a Ghyllian Bell, a/k/a Edna Gorham, a/k/a Edna Rosser-El, a/k/a Jateyah Ali, a/k/a Edna Bey,

    Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Greenbelt.   Roger  W.  Titus, District Judge. (8:06-cr-00260-RWT-1)

Argued:  March 23, 2010    Decided:  April 14, 2010

Before DUNCAN and DAVIS, Circuit Judges, and Joseph R. GOODWIN, Chief United States District Judge for the Southern District of West Virginia, sitting by designation.

Affirmed by unpublished opinion.   Chief District Judge Goodwin wrote the opinion, in which Judge Duncan and Judge Davis joined.

**ARGUED:** Michael Alan Wein, Greenbelt, Maryland, for Appellant. Mara B. Zusman, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee.  **ON BRIEF:** Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

GOODWIN, Chief District Judge:

Edna Gorham Bey was convicted on fifteen counts in the District of Maryland for her role in a fraud scheme. On appeal, Gorham Bey maintains that her convictions should be reversed and that she is entitled to a new trial because of alleged errors by the district court. As explained below, we reject Gorham Bey's challenges and affirm.

I.

In 2001 and 2002, Gorham Bey and her husband, David Rosser-El, conspired to, and did, engage in an extensive fraud scheme. Their scheme involved purchasing legitimate money orders at various post offices, digitally copying the money orders, and then printing and negotiating the copies at banks and elsewhere. Through their counterfeit enterprise, Gorham Bey and Rosser-El obtained approximately $400,000.

On June 7, 2006, a federal grand jury in Greenbelt, Maryland, indicted Gorham Bey and Rosser-El on fifteen counts. The indictment charged one conspiracy count, in violation of 18 U.S.C. § 371 ("Count One"); five counts of bank fraud, in violation of 18 U.S.C. § 1344 ("Counts Two through Six"); seven counts of uttering counterfeit money orders, in violation of 18 U.S.C. § 500 ("Counts Seven through Thirteen"); one count of possessing false identification documents, in violation of 18

2

U.S.C. §§ 1028(a)(3) and (c)(3) ("Count Fourteen"); and one count of possessing an implement for making false identification documents, in violation of 18 U.S.C. § 1028(a)(5) and (c)(3) ("Count Fifteen"). Other than the conspiracy charge in Count One, all of the charges against Gorham Bey were based on her role as an aider and abettor.

The grand jury issued a superseding indictment on June 11, 2007, asserting the same counts against Gorham Bey and Rosser-El. On July 30, 2007, the grand jury returned a second superseding indictment. The second superseding indictment was identical to the first superseding indictment, except that it named Gorham Bey only. Rosser-El entered a guilty plea the next day.

Gorham Bey pled not guilty, and her trial started on August 21, 2007. Nine days later, a jury returned a guilty verdict against Gorham Bey on all counts.

The district court sentenced Gorham Bey to concurrent terms of 60 months' imprisonment for each of Counts One and Seven through Thirteen, and 96 months' imprisonment for each of Counts Two through Six, Fourteen, and Fifteen. Gorham Bey also received a total of five years' supervised release, and the court ordered Gorham Bey to pay $225,141.00 restitution and a special assessment of $1500. Gorham Bey timely appealed.

3

We possess subject matter jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

## II.

On appeal, Gorham Bey argues that her convictions must be reversed and that she is entitled to a new trial for three reasons. First, she asserts that the district court erred in preventing her from presenting to the jury evidence that Rosser-El abused her. Second, she contends that the court impermissibly denied her request for a continuance. And, third, Gorham Bey maintains that the court erroneously refused to instruct the jury on the definition of "reasonable doubt." We address each contention in turn.

### A.

First, Gorham Bey asserts that the district court erred in preventing her from presenting evidence that she was abused by Rosser-El, and that this ruling impermissibly prevented her from making two arguments to the jury. First, Gorham Bey wanted to present evidence of abuse to support a duress defense. Second, she wanted to present evidence of abuse to support her contention that she did not know the money orders that she and Rosser-El had negotiated were fraudulent.

"As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists

4

evidence sufficient for a reasonable jury to find in his favor." Mathews v. United States, 485 U.S. 58, 63 (1988). "A district court's refusal to instruct the jury on such a defense presents a question of law that we review de novo." United States v. Ricks, 573 F.3d 198, 200 (4th Cir. 2009).

We will first address Gorham Bey's assertion that she was improperly denied the opportunity to present a duress defense. Then we will discuss her contention that the court prevented her from presenting evidence that supported her claim that she lacked the requisite mens rea to commit these offenses.

1.

a.

On Monday, August 21, 2007, the day Gorham Bey's trial started, the district court heard argument on several pretrial motions, one of which was a motion in limine by the prosecution. That motion sought to prevent Gorham Bey from introducing evidence that would support a duress defense.

After hearing the prosecution's argument in support of its motion, the court asked Gorham Bey, "Tell me exactly what you[r] proffer would be [—] the evidence that you would offer to this jury that you believe would entitle you to an instruction on duress or coercion." J.A. 196. "[W]hat we would proffer," defense counsel explained, "is that Mr. Rosser-El . . . regularly used . . . very controlling tactics with Ms. Bey; was

5

verbally abusive at times; physically abusive of her; and there was occasion when he would — he was physically abusive of her." Id. at 199. "[T]he motivation in the abuse was to get her to continue to engage in this activity." Id. Defense counsel explained that Rosser-El had accompanied Gorham Bey on several occasions to the post offices where she purchased legitimate money orders as well as to the banks where she negotiated the fraudulent money orders. Counsel further stated that there had been times that the couple's twelve-year-old daughter would be with Rosser-El when Gorham Bey was purchasing the money orders, and that Gorham Bey was concerned that Rosser-El might harm their daughter if Gorham Bey did not do what Rosser-El instructed.

Additionally, even if the court precluded Gorham Bey from "present[ing] evidence on the duress defense or argu[ing] in opening statements or closing argument about a duress defense," defense counsel requested that the court "allow [the defense] nonetheless to introduce evidence regarding abuse." J.A. 202-03. Counsel expressed that such evidence was also relevant to the separate issue of "knowledge and good faith." Id. at 203.

The court granted the prosecution's motion. The court explained that Gorham Bey had proffered insufficient evidence to support a duress defense. But, if Gorham Bey could "develop the evidence," the court was willing to reconsider its ruling. J.A.

6

204. Therefore, the court "preclude[ed] any reference to [duress] as a defense in the opening statement." Id.

b.

Duress is a justification defense. As the Supreme Court has explained,

> [l]ike the defense of necessity, the defense of duress does not negate a defendant's criminal state of mind when the applicable offense requires a defendant to have acted knowingly or willfully; instead, it allows the defendant to avoid liability because coercive conditions or necessity negates a conclusion of guilt even though the necessary mens rea was present.

Dixon v. United States, 548 U.S. 1, 7 (2006) (internal quotation marks and ellipses omitted).

A criminal defendant seeking to assert a duress defense faces a high bar. To establish a duress defense:

> The defendant must produce evidence which would allow the factfinder to conclude that [she]:
>
> (1) was under unlawful and present threat of death or serious bodily injury;
> (2) did not recklessly place [herself] in a situation where [she] would be forced to engage in criminal conduct;
> (3) had no reasonable legal alternative (to both the criminal act and the avoidance of the threatened harm); and
> (4) a direct causal relationship between the criminal action and the avoidance of the threatened harm.

Ricks, 573 F.3d at 202 (internal quotation marks omitted). Indeed, only once have we recognized that a defendant satisfied

this stringent standard and was entitled to a justification instruction.

In Ricks, the defendant, James Ricks, was convicted of being a felon in possession of a firearm, in contravention of 18 U.S.C. § 922(g)(1). Ricks, a felon, had shared an apartment with his partner, Clarence Blue. One evening, Blue returned to the apartment after having been gone for several days and was "acting erratically." Ricks, 573 F.3d at 199. After observing that Blue had a gun in his hand, Ricks ran up to Blue, held him to the wall, and knocked the gun out of his hand. Ricks then recovered the weapon, ejected the ammunition clip, and threw the pistol and clip in different directions. Blue fled the apartment. Ricks retrieved the pistol and clip and placed them in different parts of the apartment. Blue later returned to the apartment, accompanied by two police officers. The officers asked Ricks whether there was a gun in the house, and Ricks acknowledged that there was. After he admitted to a prior felony conviction, the officers arrested Ricks.

At Ricks's trial, the district court denied his request to instruct the jury on a justification defense, because the court believed that such a defense was not recognized in this circuit. On appeal, Ricks argued that the defense was recognized, and that he was entitled to have a justification instruction given to the jury. We agreed with Ricks, explaining that "[f]or

8

purposes of determining the propriety of a jury instruction on justification, we need only see whether there is sufficient evidence for a jury to conclude that the defendant's actions were reasonable." Ricks, 573 F.3d at 204. Concluding that a reasonable factfinder could have found that Ricks's possession of the firearm was justified, we reversed his conviction.

Unlike Ricks, however, Gorham Bey has failed to show that a reasonable juror could have found that she was justified in committing any of the charged offenses. Gorham Bey's proffer to the district court was limited. Her lawyer offered that Rosser-El employed "very controlling tactics," comprised of physical and verbal abuse, as well as general statements regarding Gorham Bey's fears of suffering "serious bodily injury" by Rosser-El's hand. J.A. 199. This fails to show either "a direct causal relationship between the criminal action and the avoidance of the threatened harm," or that Gorham Bey had no "reasonable legal alternative" to her criminal acts. Ricks, 573 F.3d at 202 (internal quotation marks omitted). As such, the court properly denied Gorham Bey's request to present evidence on that defense to the jury.

2.

Next, Gorham Bey argues that the district court erred in preventing her from arguing that Rosser-El's abuse caused her to lack "knowledge about the counterfeit nature of the money orders

9

at the time they were illegally used." Br. of Appellant 40. Evidence of abuse, according to Gorham Bey, would have revealed to the jury "why she would just act without knowledge or act without asking the true nature of the transaction." J.A. 567.

a.

During his opening statement to the jury, Gorham Bey's lawyer stated,

> Now, the question that you will be asked to decide ultimately in this case will be, did Edna Gorham Bey willfully join this criminal enterprise? Did she know the counterfeit nature of the money orders, or was she fooled? Ladies and gentlemen, although Edna Gorham Bey is married to David Rosser-El, and although she is the mother of his daughter, the fact is that in that relationship there was a very controlling, manipulative effort by Mr. Rosser-El to hide certain things from her and to make certain things secret; and there was also a more sinister side to their relationship, because part of that relationship also involved Mr. Rosser-El being abusive. He was verbally abusive. He was emotionally abusive.

J.A. 270. At that point, the prosecution objected, and the court ordered the parties to the bench. The court had the following colloquy with defense counsel:

> [Defense counsel]: I'm not arguing a duress defense. I think it's part and parcel to their relationship. I can avoid, you know, going into some areas of the relationship.
>
> THE COURT: I'm not sure I understand your opening statement, but I assume what you're trying to say is she didn't know.
>
> [Defense Counsel]: What I'm going to say is she did things blindly and just followed his direction.

10

THE COURT: I think you're going too far with this question of manipulation or abuse.

[Defense Counsel]: That helps explain why she did things blindly or without question.

THE COURT: I sustain the government's objection.

J.A. 271.

Defense counsel continued his opening statement. He said to the jury,

Ladies and Gentlemen, Edna Gorham Bey blindly followed her husband's wishes and blindly took his direction and did what she, as his wife, was supposed to do. She purchased the money orders; she cashed money orders and made transactions and deposits at banks with money orders, and there is going to be no dispute really . . . as to what she did. The big question is, why she did it and did she know of the sinister nature of the scheme that Mr. Rosser-El had masterminded. That is going to be the ultimate question in this trial for you to answer.

J.A. 271-72.

Several days later, prior to the fifth day of trial, the prosecution filed a supplemental motion in limine, seeking "to preclude any further testimony and argument about Rosser-El's alleged abuse, because such evidence bears no relationship to the issue of intent." J.A. 504. Although the court granted the motion, it nevertheless explained that while Gorham Bey could not present evidence of abuse to show duress, she could present evidence of abuse to negate knowledge. The court explained to defense counsel,

11

> [I]f you intend to present testimony that [Gorham Bey] was simply unaware and it had been represented to her by her husband at all time or Mr. Rosser that [the money orders] were genuine, that's for the jury to make that decision. I won't preclude that. But just the fact that [Rosser-El]'s a very persuasive fellow isn't going to constitute admissible testimony.

Id. at 579. The court continued, "If you want to put this on the 'knowledge' prong as opposed to the 'intent' prong, I can't stop you from doing that. It may not be credible with the jury, but that's for them to decide, not me." Id. at 580.

#### b.

Gorham Bey argues that the district court precluded her from presenting evidence that Rosser-El abused her — evidence relevant to whether she knew that the money orders she helped negotiate were fraudulent. She maintains that the court thus erred, because, from this evidence, a reasonable juror could have concluded that Gorham Bey was not a knowing participant in the offenses charged.

Gorham Bey's argument is simply inconsistent with the record. While the district court refused to allow Gorham Bey to present a duress defense, the court explicitly permitted her to present to the jury any evidence she believed negated her mens rea. We thus reject Gorham Bey's contention that the court intruded upon her right to present a lack of knowledge defense.

12

B.

Second, Gorham Bey argues that the district court violated her Sixth Amendment rights when it did not grant her request for a continuance.  We disagree.

1.

Gorham Bey and Rosser-El were indicted together, and, after the district court denied a motion to sever by Gorham Bey, it was evident that they would be tried together.  On July 31, 2007, however, Rosser-El pled guilty.

Sixteen days later, on Thursday, August 16, 2007, Gorham Bey's trial counsel purportedly first learned that Rosser-El might be willing to testify on Gorham Bey's behalf.  The following Monday, August 20, counsel decided that he wanted Rosser-El to testify, and he began discussions with the United States Marshal to have Rosser-El transported to Maryland to appear.  That same day, the court conducted a pretrial motions hearing, impaneled a jury, and commenced Gorham Bey's trial.

On Thursday, August 23, apparently unable to secure Rosser-El's presence on his own, Gorham Bey's lawyer requested a continuance and petitioned the court for a writ of habeas corpus ad testificandum to compel Rosser-El's presence.  Recognizing the complications underscoring Gorham Bey's request, the court stated,

It was not until a couple of days into this trial that any request was made for this court to issue a writ to try to get [Rosser-El] back here. I am advised by [the United States Marshal] that Mr. Rosser is in Oklahoma, that the department is obligated to return him to Virginia under the arrangements that have been made to secure his presence here for his guilty plea; that if we were to pull out every stop we could pull out to get him here, the earliest that Mr. Rosser could be produced in this court may be Wednesday, September 5th.

J.A. 560-61. The court explained further, "[I]f I am to accommodate the defense's request, that means that this case cannot end this week; it means this jury has to be brought back next week; and it's going to be a very, very unhappy jury. This kind of request should have been made a lot earlier." Id. at 561.

The district court asked defense counsel, "[W]hat do you proffer [Rosser-El's] testimony would show? I mean, is this going to be the question of duress and coercion?" J.A. 562. Defense counsel responded, "No, Your Honor. I think it would be along the lines . . . of what was represented in opening statement in terms of Ms. Gorham Bey's lack of knowledge of the counterfeit nature of the money orders." Id. at 563.

The district court denied Gorham Bey's continuance request. The court explained that the case had been set for trial "for quite some time," and that "[e]fforts to secure [Rosser-El's] testimony should have been made a long time ago." J.A. 563-64.

14

2.

A district court's refusal to grant a continuance is generally reviewed for an abuse of discretion. United States v. Williams, 445 F.3d 724, 739 (4th Cir. 2006). A district court "abuses its discretion in not halting proceedings to allow the defendant to secure a witness when the witness appears to be prepared to give exculpatory testimony and the defendant has made reasonable efforts to secure the witness's presence before trial." United States v. Jackson, 757 F.2d 1486, 1492 (4th Cir. 1985).

Gorham Bey contends that the court's denial of her continuance request violated the Confrontation and Compulsory Process Clauses of the Sixth Amendment. In pertinent part, the Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him [and] to have compulsory process for obtaining witnesses in his favor." U.S. CONST. amend. VI. The denial of a continuance may violate the Sixth Amendment, but only if the denial was "an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." Morris v. Slappy, 461 U.S. 1, 11-12 (1983) (internal quotation marks omitted).

The district court's ruling contravened neither the Confrontation Clause nor the Compulsory Process Clause. The

15

Confrontation Clause gives an accused the right to confront a witness who has testified against her. Here, Gorham Bey has not explained how Rosser-El could be classified as a "witness against" her. Indeed, she has not identified any testimony by Rosser-El whatsoever. As such, Gorham Bey's confrontation rights were simply not implicated in this case.

Likewise, Gorham Bey's rights under the Compulsory Process Clause were unaffected by the district court's decision. That Clause guarantees an accused's right to call witnesses "in his favor." U.S. CONST. amend. VI. A unique situation is presented, however, when the sought-after witness is in prison. Federal law authorizes district court judges to compel the presence of federal prisoners to testify through a writ of habeas corpus ad testificandum. 28 U.S.C. § 2241(c)(5). The decision of whether to issue a writ is one that lies within the discretion of the district court. Jackson, 757 F.2d at 1492.

The timeliness of a defendant's writ petition is significant. We have held that when

> the defendant fails to petition for [a writ of habeas corpus ad testificandum] until after the beginning of trial, the trial judge has discretion in ruling on the petition comparable to his discretion in ruling on a motion for a continuance to secure a witness during trial, for the effect and purpose of the petition is the same as the motion for continuance. The defendant is not entitled to special consideration by the fortuity that the witness he seeks to secure is in custody.

16

_Id._ Simply put, the longer a defendant waits to petition the court for a writ, the greater the risk her request will be refused. This is particularly true when, as here, the defendant puts off asking for a writ until the trial has already started.

Several factors should be considered in determining whether a district court has abused its discretion in denying a continuance request by a defendant seeking to obtain a witness's presence at trial. Among those factors are "who the witnesses are, what their testimony will be, that it will be relevant under the issues in the case and competent, that the witnesses can probably be obtained if the continuance is granted, and that due diligence has been used to obtain their attendance for the trial as set." United States v. Clinger, 681 F.2d 221, 223 (4th Cir. 1982) (internal quotation marks and alterations omitted).

Gorham Bey's challenge falls short on the diligence inquiry. Gorham Bey argues, and we agree, that she cannot be faulted for not petitioning the district court for a writ or seeking a continuance before Rosser-El pled guilty. Before that time, Rosser-El and Gorham Bey were codefendants whom the district court had ruled would be tried together.

Gorham Bey is at fault, however, for failing to act after Rosser-El pled guilty. From that point, Gorham Bey had approximately three weeks before the trial started to seek a writ or move for a continuance. Indeed, the district court

17

conducted an extensive motions hearing on the morning of the first day of trial. Rather than seeking a continuance then, however, Gorham Bey waited until August 23 — four days into the trial — to ask the court for a continuance. Gorham Bey's trial counsel failed to diligently seek Rosser-El's attendance as a trial witness. The district court therefore acted within its discretion in denying the motion to continue.

## C.

Finally, Gorham Bey argues that the district court erred when it did not instruct the jury on the definition of "reasonable doubt" after defense counsel requested that it do so. A district court's refusal to give a party's requested jury instruction is reviewed for an abuse of discretion. United States v. Patterson, 150 F.3d 382, 389 (4th Cir. 1998).

Although some of our sister circuits have held otherwise, we have "consistently and vigorously condemned the attempts of trial courts to define reasonable doubt," unless such an instruction is requested by the jury. United States v. Reives, 15 F.3d 42, 45 (4th Cir. 1994). And even if the jury requests a reasonable-doubt instruction, "the final decision of whether to acquiesce to a jury's request and define reasonable doubt" is left to the district court's discretion. United States v. Walton, 207 F.3d 694, 699 (4th Cir. 2000) (en banc). Consequently, Gorham Bey asks us to overrule decisions by

18

previous panels, something only the <u>en banc</u> court of appeals or the Supreme Court of the United States may do. <u>See</u> <u>United States v. Guglielmi</u>, 819 F.2d 451, 457 (4th Cir. 1987). We decline this invitation. Under controlling precedent, the district court was not required to define "reasonable doubt," and we find no error.

## III.

For the reasons explained above, we affirm the judgment of the district court.

<u>AFFIRMED</u>